Our third case is 23-1911, Shelby Roberts v. Carter-Young, Inc. Mr. Roberts? I believe it's also on the other side. Oh. Well, that's unfortunate. All right. Thank you, Your Honor. May it please the court. This is a Fair Credit Reporting Act case, which the district court dismissed on a Rule 12b-6 motion. We contend that this was erroneous and that the district court adopted a view of the Fair Credit Reporting Act that does not comport with this court's holdings or really with the holdings of most courts. The Fair Credit Reporting Act is obviously a consumer protection statute aimed at protecting consumers from false information. Section 1681 S.2.B.1, which is the critical statute or provision in this case, authorizes or provides a mechanism by which consumers can contest information they contend that's false in their credit report and can actually get a correction of that. So, essentially, a furnisher, upon being notified by a consumer reporting agency, that the consumer, I mean, excuse me, a furnisher, upon being notified by the CRA that the consumer has disputed some element of their credit report is under an obligation to conduct a reasonable investigation of the dispute and to take appropriate action. And the statute specifically defines what that appropriate action is. Originally, it did not go to furnishers, but in 1996 and then again in 2003. The investigation counsel is to accuracy and completeness, not any dispute. It has to be to the accuracy of the information that is disputed in the file. You agree that the agency does not have to investigate, in other words, the facts of the dispute and make resolutions. In other words, they don't have to go start questioning witnesses and get expert witnesses and go to the scene. It seems to me it's an existential question whether the dispute is a real dispute. In other words, they got the wrong name or whether it's manufactured or whether it's been settled. But an important aspect would be disclosed that it is, in fact, disputed. But in this case, they checked and they found that she was the lessee. She left the apartment. She was actually billed for damages. That the bill has remained unpaid and that it's disputed. And they did report that it was disputed, right? They reported that it was disputed, but all those facts are accurate. Now, what you're asking is that they go into the aspects of the dispute and make a judgment call as to whether the claimant or the respondent is more correct. She says this was retaliatory and fraudulent. Well, fraudulent says what didn't exist. Well, it did exist. It's a real claim. And they checked that out. It was retaliatory. That goes to her defense. They don't have to resolve whether it's retaliatory or not or whether it's good faith or whether the damage was sufficient. Seems to me you would be imposing a mini trial investigation and get experts. And then she'd dispute whether they came out with the right result and you had no appeal process. I'm not sure where, what investigation, what did you want them to do besides verify that the complaint was there and it was disputed? Well, I don't believe this court's decisions exempt them from investigating the merits of the dispute. Well, we have two cases, as I understand. One says we need a reasonable investigation. And the other is we said we have to look at the files and the documents in the file to make sure that the report was accurate. Well, you've got the Sanders or whatever it was. Well, I mean, I believe the Johnson decision was a similar decision to 2004. And in that one, you know, the issue had to do with whether the consumer was responsible, legally responsible for a particular credit card. How can they make that determination? Well, you have to go in and conduct an investigation. There's nothing in the statute I see that exempts. Who's legally responsible? All we have to report is that it's disputed. I mean, I don't believe Saunders said that that's all you have to do. Saunders was the decision. Well, take me on. Tell me what you wanted them to do. You wanted to question witnesses? I wanted them to talk to the creditor, in this case, the landlord, and actually investigate the facts that we were alleging, which was that the charge, a $500 plus charge for a new stove. That goes to dispute. And number one, your allegation is basically that it only needed a handle. We didn't hear the other side's claim. Maybe there was other damage, number one. Number two, that was $500 of a $1,200 bill, a $1,300 bill. Well, the only thing that's... And the other damage was they billed them for $1,200 or $1,300. Yes, and... And there's no explanation except that it's disputed. And you want them to go investigate that, too? I want them to investigate the dispute, which was that the charge was fraudulent and fictitious. It was created out of thin air. It didn't exist. They made it. They made the claim. And they made the claim for damages, and the lease requires that. Now, she disputes that there's damage, but... The lease isn't even in evidence. I mean, this should not have been dismissed on a motion to dismiss. They didn't dispute that the lease made the landlord responsible for repairing the handle. There's no evidence in the case that they had a different view of the law or of the lease. All right, so let's go, the investigator, the credit company, goes and asks questions and concludes that the claimant has a legitimate claim and should win. And puts that in there. What would her response be then? And puts what in there? Puts it in the report. We investigated this, and based on our investigation and questioning the witnesses, we think it's a legitimate claim. Well, they didn't do that, though. I said, hypothetically, if they put that in, what's your client's response? Well, that that was false. That they did not have sufficient information in their possession to verify the debt. My hypothetical is they asked the questions and they were told about some wall damage. They were told about the fact that there was a dent in the front door of the oven in addition to the handle. And that the replacement fixing it cost more than its value. I mean, this is the type of stuff you want the credit company to get involved in. And then she's going to dispute it even more. It's not the credit company, though. It's the furnisher of that information. And the furnisher has an obligation to investigate the merits of the dispute. I don't think this case, Saunders did not suggest. In Saunders, the dispute was was not an inaccuracy in the information, but a misleading or an omission that it didn't. And so that was a that was a completely different case. This court is not held. I don't believe Johnson or Guthrie or any of those decisions suggest Guthrie was a case involving a bankruptcy plan. And the creditor had to go in there or the furnisher had to go in there and investigate whether that was a was a was a legitimate. You know, or whether the disputed information was actually correct. I don't know how you can investigate a char or a dispute without getting into the merits of that dispute. And then the issue of what you can do is you do an existential investigation to avoid the notion that there's a claim. In other words, the claim could be related to another person with a similar name or the claim could have been settled or the claim could. In other words, something that it should not be attributable. The claim should not be attributable to the to your client. But in this case, the claim was made. The invoice was sent and she disputed it and they reported all those elements. Now you're asking the card to go in and go out and find witnesses. So they report what they find and your client then disputes it. And then you have you have the same type of litigation. I mean, it seems to me the question is whether there's a disputed claim is a fair statement. There is a disputed claim. But that that is that is not all that the statute requires. The statute uses the word investigate, investigate, reasonably investigate. It doesn't say reasonably, does it? But no. But this course, Johnson decision clearly said reasonably. All right. And which requires a searching inquiry and not a superficial inquiry. There was much that they could have investigated. We believe and we allege that they had in essence had been told by the clients that there was nothing else. They didn't purchase a new stove. They didn't replace it. Yes. Yes. Well, they could have charged her fifty thousand dollars for it. There's not. I mean, this this means they can fabricate a charge out of thin air with no lead. No, no, no, nothing in the lease that supports it. The lease and state law both require 42. G.S. 42 dash 42 a four specifically requires the the firm of the landlord to correct or fix and repair items such as appliances that such as this. So we this would have just opens the door to any kind of fictitious charge. So I'm looking kind of the follow up on the dialogue y'all are having in the complaint. It seems like you, on the one hand, use some language. It's kind of tortuous and legal, like Judge Niemeyer was talking about, retaliatory, fraudulent and things like that. It seems to me those sort of legal concepts are perhaps beyond what would be expected of a furnisher, because that's almost conducting a mini trial. But let me finish. I'm trying to, you know, I'm trying to see if there's anything in here beyond that. But, you know, fairly reading your complaint, you do say that you were charged for replacing a stove and a stove was replaced. That seems like it's a yes, no thing. Was it replaced? Also, you say there are some other charges that were not existing. Those seems like yes, no things. Those seem to me different than whether damage is, you know, whether conduct was tortious or whether whether damage was, you know, normal maintenance and things like that. Seems to me, maybe, you know, whether damage is, you know, caused by someone or is normal wear and tear might be beyond what the statute's talking about with accuracy and completeness. Certainly, the tortuous stuff that is alleged seems like it's beyond accuracy and completeness. But is there something to this notion that, quite frankly, it seems like, you know, that your colleagues are suggesting, you know, that accuracy means, you know, objectively and readily verifiable. And whether a stove was replaced seems like it's, you know, objectively verifiable. If I may answer that question, the yes, the term fraudulent just meant we used not as a state law fraud claim, but as a claim that it was fictitious. It was created out of thin air. It was. So, I mean, we're not asking them to resolve some kind of legal claim. Fraud simply means that it's false, it's inaccurate, at least as the way we were trying to use the term. Retaliatory was simply explaining why they did what they did. Why would a landlord fabricate a debt like that? I mean, it begs that question. And we offered an explanation for why they would do that, not asking them to investigate whether it was truly was retaliatory. There's no there's no retaliation defense to a debt. If the debt was valid, if the debt was correct, the fact that it may have been motivated by retaliation would not be a legal defense to it. So that just offered context and explained why, you know, why they might do what they did. So, yes, if you said, for example, someone said, yeah, you know, maybe I was billed, maybe I didn't pay. If I was fraudulently induced into this contract, that that's not accuracy and completeness. Would you agree with that? If a fraudulent inducement claim, yes, I would agree that that's not that's not something that they would be required to. And there's nothing in this complaint that suggested it's trying that we got to decide not just your case, but other cases. Yes, I understand. Make sure where you're going with your. Well, we don't dispute that that if something's accurate and that there might be certain like legal claims like they cited in a supplemental letter, the 11th Circuit's Holiday Inn case where they were competing court decisions about the impact of these timeshare agreements. And in those where the court held that where you can't really. How can a furnisher or a creditor or a consumer reporting agency decide between those? There's nothing like this. They don't they don't offer any contrary view of the law or of the lease. As I say, the lease isn't even in the evidence. But we pled that it made the made the the the furnish or the landlord responsible for that. So but what they could here's what they could have investigated, if I may, is they could have investigated. Ansley was their client. This is not somebody that they had to go out and seek out. They had direct access to it. They could have asked, you know, for one thing, they could have asked for an invoice, a third party invoice showing that they did replace the stone that would have arguably verified the charge for it. But as I understand the case law and the Hinkle decision out of the 11th Circuit, I think is instructive is that the question when a furnisher re-verifies, which is what they did when they re-verify a debt or disputed information. The question becomes whether they had in their possession sufficient documentation or evidence to support it. At this stage, we don't know what they have. There's no in our view, this was an entirely premature dismissal of the case. But in any event, we don't believe that they have anything that would support the charge for a five hundred dollar plus charge. With respect to the miscellaneous damages, they could have simply requested a statement from from the maintenance department, detailing the labor and and and material costs. And they didn't do any of that. So I think that there is much that they could have investigated. And I do not believe that the district court was correct that you can say this is not just a transcription error. The Second Circuit and CESA, you know, Mr. Roberts, you're way over your time. All right. Thank you. Thank you. Ms. Blum. May it please the court, Karen Blum on behalf of the Consumer Financial Protection Bureau. In the last year alone, the Bureau received over a million complaints related to credit and consumer reporting. Among the most common issues identified were incorrect information on a report and problems with companies investigations. Each consumer who faces detrimental information on a report can face dramatic consequences, including but not limited to their finances, their employment and their housing. Congress recognized the importance of fair and accurate credit reporting, including the importance of excluding false information on consumers credit reports and preventing the reporting of unverifiable information. Ms. Blum, can you respond to Judge Meemeyer's hypothetical of a furnisher who conducts an investigation, prepares a report of some kind and submits that information to the debtor and the debtor continues to dispute the information. And you sort of have this endless cycle of dispute followed by investigation. At what point does the furnisher's obligation end? So I think this court has been clear that the investigation must be reasonable. And again, the reasonableness is a fact-specific determination. It depends on what information was provided to the consumer reporting agency. To the extent there's only minimal information, there may be a lesser burden on what that reasonable investigation may entail. It depends on who the furnisher is, whether it's the creditor themselves or somebody else. There are all sorts of factors that could play into this. And so the reasonableness is really key here. And this court appropriately for the last 20 years has held that that's what should be relevant here. Let me ask you, what's your position on a situation, and we don't need to relate it to this case in particular, a situation where a landlord sends a bill for damages for an apartment, a $2,500 bill for repainting and damaged plaster and all kinds of things. And the defendant disputes it and says it's for wear, normal wear and tear. And says, I don't owe it. And it's reported. Now the furnisher has got an objection and goes back to the landlord and said, did you make this claim? He said, yes. And you made this claim for damages? Yes. Has the damages been paid? No. Is the dispute still open? No. Is the dispute, is the claim disputed? Yes. And that's what they report. Now that's one approach which seems to make a lot of sense is to eliminate fraudulent claims, ones that don't exist, ones that are settled, ones that got the wrong person, this type of thing. The second suggestion is the company goes in and investigates, and the landlord gives them photographs of what was done, the damage, and gives them a breakdown of the building. So now the credit furnisher, the information furnisher, puts in the report. There is a claim. We have verified that there were damages there. They were excessive damages. And we believe that the charges were fair. Okay. Puts that in the report. What's the creditor? Has the creditor been benefited in that? Or what's the creditor's position? In other words, I'm worried about us creating a mini trial under these regulations where the furnisher has to conduct a proceeding as a prosecutor and investigator instead of just reporting the fact that a claim has been made. I've gone back to the landlord. The landlord says it is a claim. We did make that claim against this person, and we believe the person's owing it. It seems to me to have them go start questioning witnesses, taking pictures, investigating, getting experts, you get into this internal battle and we're going to have mini trials in the process. Is that what was intended? Respectfully, I don't think so. And, of course, the person who loses on that report is going to object. I do think the reasonableness inquiry does get at that, right? So it doesn't necessarily always mean bringing witnesses, but it does mean not just taking the fact that there was a bill as the end of the story. A disputed bill. In other words, a bill was sent, what it was sent for, and the question in my hypothetical is they sent it for damages by the lessee and said, yes, we sent that bill and it remains unpaid, but we tell you she has disputed it. Now, that seems to me she can put anything she wants in, but it's the fact that it's disputed all of a sudden creates a situation where does the furnisher have to give details of the dispute? So, respectfully, I do think what the furnisher has to do is reasonably investigate. The reasonably doesn't help us. We use the word reasonably in our earlier opinion, but reasonable, we assume everything's reasonable. You know the Sherman Antitrust Act said any combination contract of conspiracy and restricted trade is illegal. And the Supreme Court says, well, that really means reasonable. I mean, we put reasonable everywhere. That's okay. I agree with that. But my question still is when we're investigating that is what is the line that you believe should be followed? In other words, how far should the furnisher get into the merits of the dispute? I'm conscious of the time. Can I take the time?  So, I think it's important to recognize what Congress was trying to do here. Congress was looking at tons of people facing inaccurate reporting and investigations that weren't sufficient. And even now, right, we still face millions of consumers a year who are facing inaccurate reporting and struggle to get the inaccuracies removed from their reports. That doesn't help me with my question. So, sometimes it may just be looking at whether there's been a judgment that's not being reflected in the situation. And so, we know there are lots of cases where there, for example, has been a discharge and somebody is still being reported as owing a debt. That's an inaccurate bill. But here, my hypothetical is where, not this case, but similar, where the lessee is sent a bill for $2,500 and they itemize damages and the furnisher checks and said, yes, there is indeed a claim. It's not been discharged, but it's disputed. And that's what's reported. Now, your suggestion, I don't know if it is your suggestion, that's what I'm asking, is to what extent does a furnisher have to get in and report the accuracy of the claims and defenses? The furnisher is not – their obligation is not to adjudicate the debt. Right? That's not what's going on here. They just have to investigate and determine whether they have a sufficient basis to believe that the debt is owed. And so, if they reasonably believe they have a sufficient basis, that's the inquiry that a review court would be looking at. So, the landlord says, they call up the landlord, and the landlord says, we had a lease with this lady, we had a deposit, we have a claim for damages that's more than normal wear and tear, and we sent her a bill. And she has disputed it because she doesn't believe – she believes it's normal wear and tear. That's the information. Do they have to go further? I think it's a fact-specific question. On my case. That's what we're trying to figure out. I think I can help you. We got a question about whether – it's one thing whether they did the painting or they bought a new stove. That's a yes, no, maybe thing. We could debate that. But whether the damage is normal wear and tear versus whether it's not, I think goes to the heart of what we're trying to figure out here. And I think that exactly gets at what the difference is between having the inquiry be about a reasonable investigation and determining on the front end whether or not the dispute is readily and objectively verifiable. What the appellees here are arguing is that there should be determination on the front end before any development about whether this is a dispute that is about accuracy or not. But the cases that that standard comes from were after a whole development of a record. Let me interrupt you. I understand your position about a front-end kind of screen. I'm not trying to be rude and cut you off. Assume you get the notice, you have a duty to investigate, and the furnisher learns that the landlord says there was damage. The tenant says, I didn't do it. So they dispute about whether it was normal wear and tear or not. Does the duty to investigate include resolving whether the damage was normal wear and tear or not? It does not necessarily involve resolving it. It does involve doing a reasonable investigation so that the furnisher has a sufficient basis to conclude that the debt is owed. So what does that mean? So, for example, if they just asked, did you bill this, without in the hypothetical asking what were the damages, that may be unreasonable. So just saying there was a bill might not be enough, but saying were there actual damages, and if they say yes, is that reasonable? And what was done, right? So in this case, for example. Concluded by they had to affirm that the debt was owed. And to me, she says she didn't owe the debt, and the landlord says she did owe the debt. Now, are you asking the furnisher to resolve whether the debt was owed? You said yes, but I don't understand how you get to that result. So I think there are a few things going on here. There's the question of what the furnisher has to do under the statute, and then there's how does the case proceed, right? We're at the motion to dismiss case. So really, so all that's before the court, right, has this plaintiff plausibly pled a violation of the statute? I know you don't want to answer my question. I'll ask it once more. Now, does the statutory duty require the furnisher to get involved in giving an opinion about the validity of the debt in terms of merits? If furnishers are furnishing information about a debt, they have to have a sufficient basis to believe that debt is owed. Well, they call up the landlord. The landlord said, yes, there was damage caused beyond wear and tear, and we sent a bill. Is that enough? Again, it depends on whether there's factual information. Is that enough as a matter of law? It's a fact-specific inquiry. What other fact do you want to know? So, for example, whereas in this case there was an allegation that the— Not this case. Hypothetical. If a consumer alleges specifically why the damages were not what they were charged to be, then that would— Because it's normal wear and tear. Well, then I think that may involve more of an inquiry, and I think Congress thought so, too, because Congress contemplated an assessment after the investigation of whether the reported information could be verified and said if it couldn't be verified after an investigation, then it needed to be changed and reported to the Consumer Reporting Agency that it needed to be modified. And so because Congress put that verification inquiry after the  it's inappropriate to be doing it on the front end under this rubric of whether or not the dispute involves something that is objectively and medically verifiable. All right. Thank you, Ms. Blumen. Mr. Aust. My name is Jonathan Aust. I'm representing the appellee Carter Young. Mr. Roberts alleges that Carter Young, a data furnisher, violated the Fair Credit Reporting Act when it failed to conduct a reasonable investigation in response to her dispute to a CRA. The text of the FCRA limits a data furnisher's obligation to conduct a reasonable investigation to only one of two things, completeness or accuracy. Ms. Roberts and the CFPB incorrectly argue there's no such limitation. This appeal only relates to the first limitation, accuracy. Accuracy under the FCRA is objective, meaning it is something that is objectively and readily verifiable. If a consumer's dispute does not challenge information that is objectively and readily verifiable, then the FCRA does not apply. But the question, I think, on that issue, I mean, there's a timing issue here of whether you have to investigate or not. And I understand your position now to say that the furnisher, upon receiving notice of a dispute about the accuracy and completeness, then gets to decide whether or not it really is about accuracy and completeness. Is that, am I understanding you correctly? Correct, Your Honor. Okay. Yeah. I mean, the trouble, I mean, I'm not sure how the statute supports that. I mean, I think the ultimate, it makes sense to me that the ultimate investigation is about accuracy and completeness and not a bunch of things that fall outside of that. And we can talk about that. But, you know, if you look at the notice, if you go to the section in the FCRA, I think I got it right, that describes the notice. It's talking about, there's an indirect claim like this. There is a notice to the credit reporting agency about accuracy and completeness. And that credit reporting agency does some screening, including for whether it's frivolous or not. But if they say it is and they send it on to the furnisher, you know, then as I read the statute, they have to do an investigation. I know it says in the lead in paragraph, it's about accuracy investigation and you're trying to say, well, we get to decide whether it's about accuracy investigation. I think that's really just describing the type of notice. I don't think that's given the furnisher the ability to say, Hey, no, this isn't before the thing I do have to do an investigation about. Well, I think that argument completely reads the words accuracy and completeness out of the FCRA. No, it doesn't. It just says that determination is made by the CRA who gets the report. And when it repeats it, it's just describing what happened in the earlier section. Well, the 1681I, I believe, is the section referring to about the CRA's duty. When you read both statute, when you read both sections of the statute, they have the exact same language. And I disagree that I think that the, it is important distinction than an S2B they include completeness or accuracy. They did that for a reason. They didn't just use it as a, a reference point back to 1681I. Here's the reason why is because also in S2B, there's the time limitation and then S2B, they don't just say 30 days like they would, they refer back to the statute. And so in one section of S2B, they don't include the words, but specifically in S2B1, they do specifically include the words accuracy and completeness. What if I assume, and this is not a decision, because I appreciate that argument. I will think, we'll all think about it hard, but assume hypothetically that you do not get the ability to decide on the front end, whether you do an investigation or not, but you must do an investigation. If you get a notice from the credit reporting agency about a, about the accuracy and completeness and you got to go do an investigation. Is it your position? It seems like your position would naturally follow that what we, what our, what our investigation should be is about things that are objectively and readily verifiable. Correct Your Honor. Okay. And let's kind of try to figure out what that means in this case. As I read the plaintiff's complaint, they allege, and I asked your colleague about this, you know, a number of things about fraudulent and retaliatory and things like that and ordinary wear and tear. And I understand that getting into that arguably might make a furnisher conduct a mini trial and assume I think that's not what's required. But I think at a 12B stage, it's fair to say that the plaintiffs have said that they were charged that the landlord said, I'm charging you for replacing a stove and that the landlord never replaced the stove. Is it objectively and readily available as to whether the landlord replaced the stove or not? Well, I think to answer your question, there's a distinction between what Ms. Roberts told the CRAs was the basis of our dispute as opposed to other facts in the complaint. So, and the reason I say that is there's three specific allegations in the complaint of what she told the CRAs. It's paragraph 30, which is joint appendix nine, paragraph 35, joint appendix 10 and 63, which is joint appendix 14. And those three allegations she specifically says retaliation and fraud. She does not include any factual assertions as to this is why I don't owe the debt. Her entire basis of the disputes, the CRAs was retaliation and fraud. So I'm sorry. So, but I'd like you to answer Judge Quattlebaum's hypothetical. If you think it's hypothetical, I, you know, the plaintiff thinks otherwise, but if in fact the allegation was I've been charged for a stove that was never installed or replaced, is it your position that that doesn't need to be investigated? Part of the point is that that's a simple, that's a simple. Okay. Yeah. So, so that is, you can see that. Okay. But so you have a duty to investigate that. Well, that is, if that is the basis for the dispute, there's no allegation in this complaint that I don't owe this debt or no allegation that they told the CRA, I don't owe this debt. But the complaint says, I mean, you may, and we're a 12B6 we're governed by the rules of civil procedure and we have to accept the allegations and true and reasonable inferences from that. And I think there's allegations in the complaint that get into legal stuff that, you know, would go beyond what's objective or not. But I think it's fair to read the complaint to say, landlord says I replaced the stove. I'm charging you for it, but they never did that. And that seems like even under your test, that would be objective and readily verifiable. All you got to do is say, did you replace the stove? Wait, here's the other facts that are in the complaint. When you look at all of them. So I got it, but let's assume they had just said that. Let's assume the complaint says I got charged. The landlord charged me for a stove. The landlord said it replaced the stove after I left. It's charging me for it. And the landlord has never replaced the stove. That's it. That's the four corners of the complaint. And do you, is that something the furnisher has to investigate and say, landlord, did you get a new stove? I agree with, yes, that would be something that would be objectively readily verifiable. There's going to be the answer to that question. But the issue we have here at the motion to dismiss, when you look at the other allegations in the complaint, I want to make something clear that when you read the complaint, there's an allegation that there was damage to the stove. There's allegations that could have been repaired. Ms. Robertson, her brief keeps arguing it was repaired. There's no allegation that the stove was ever repaired. You also have a subjective nature where there's a dispute between Ms. Robertson and Ms. Ainsley where she said, Ainsley says it was forcibly pulled. And Ms. Roberts disputes that. And so the one fact that is objectively readily verifiable is the, whether or not the stove was replaced. A lot of the other stuff in the complaint is all subjective. The complaint said it turned out later that the stove was never replaced, but at the point of the complaint, this is a timing issue. At the point of the complaint, there was no complaint made that the stove wasn't part of the claim. And the furnisher was never put on notice to investigate the stove. I think you're right. I think it's important that you can only, you only have to investigate things you know are a dispute. And so on the report, whether the report was acting. I don't know. Is the record actually have the initial credit report that was furnished to them? It does not, Your Honor. Do you know what it said? As to what the report said? Yeah. I think the report just said it reported a $750 debt. I don't think it explains the full nature of everything in the credit report. I thought it was closer to 1,200. I think it was 1,200 total. They reduced the amount by 500 of the security deposit leaving. I think it's 700 and some change dollar balance. Oh, balance. I see. And that's the report. So they call up Ansley. There's nothing about a stove or wall or anything else or painting. There's just a claim and they call up and they check with Ansley and they verify the claim, right? Yes, there's communication back and forth between Ansley and Carter Young about the Ms. Roberts dispute. Yeah. And so then they report back that it is and they say it's disputed. That's the facts in the report. Now, is there anything in the initial complaint or the response that refers to a stove? There's only one allegation of the complaint that references the stove. The stove not being replaced or repaired. Excuse me, not being replaced. No, I'm talking about reporting. In other words, was there a report about the stove and was there an objection about the stove? There's a dispute notation on the account. So the credit report reporting as disputed. Now, if Ms. Roberts wanted to add, it's called an explanatory statement. The 1681 I allows her to then send a notice to the CRA saying, I don't, this is why I don't know this. And so she has that other remedy to have that notation added to her credit file. That's not alleged in the complaint, but that's an additional remedy that the FCRA provides Ms. Roberts in addition to the account itself being marked as disputed. So counsel, um, well, that doesn't quite get, my question is, does the record show that the initial credit report and the, uh, investigation and the re-reporting in, at, in any sense mentioned the stove? The credit report itself, no, Your Honor. And it wouldn't. It's just how the nature of how credit reporting worked. It is merely basically, I can give you some context. Did your files contain any reference to a stove? It has, uh, it's not in the complaint, but I, outside of it, if you want me to go off the record, I can answer that, but there's nothing in the complaint about what was in our files about whether or not the stove was repaired or replaced. And counsel, can I ask a question about how the statute works a little bit? Yes, Your Honor. Yeah. In, in, in, um, you know, in, in S2B1 is what we're looking at and it goes through A through, um, A through D about what's supposed, um, yeah, A through D about, you know, the duties. And we've been talking about that a little bit, but, um, E introduces a new phrase, which is cannot be verified. And so I'm trying to figure out how that works. That's, that was added later. It seems to, it seems, you know, they're saying whether it's accurate and incomplete. And then we have this new section that says cannot be verified. So going back to my hypothetical, that the only thing at issue is whether the stove has been replaced or not. Landlord says, um, yeah, I replaced it. You, you, you go check. Um, landlord says, yeah, I replaced it. And you said, okay, great. Just send me the invoice and we're all good. Well, I don't have an invoice. Is that where we have a objectively and readily, readily available verifiable issue? Correct. Because I think we have a, he said, she said, and it, it hasn't been verified. I'm not talking about whether it should have been replaced or not. I'm talking about whether it was. So the example I keep thinking of is, uh, pay history. So somebody disputes a debt saying I paid this. And so I think that goes to, that's something that's objectively readily verifiable. Did a payment happen or not? And so I say, I say I paid it. He says I don't have it. And so, yeah, so, and you were, so what it would be is that fact can be determined. We go back to the creditor. For some reason, the creditor had lost their payment history. So that is a situation where there is an objectively readily verifiable issue. We just can't verify it because of lack of evidence or some of them. You got to take it off the report. Yes, sir. Okay. I see that my time is about to end. Um, if there's any other questions, I'll, I'll wrap up. Um, I would like to say, uh, our contention is that, uh, miss Roberts would dispute was not objectively readily verifiable. Therefore it was not about accuracy under the FCRA and the FCRA does not apply for these reasons. Carter young respectfully requests for the district court to be affirmed. Thank you. Counsel. Thank you. I'm Sarah. I represent Dr. Looney. I represent amicus ACA international, the association of credit and collection professionals. We represent approximately 1800 creditors, collectors, collection attorneys throughout the United States. And we're interested in this matter because if the court adopts the CFPBs view of the dispute investigation procedures, it will create systemic risk to the consumer credit reporting system and cause credit report information to be less reliable from a compliance perspective. In my view of reviewing the information, which admittedly is more than what you have available on the record. Um, Carter young followed industry best practices. Uh, when the dispute was lodged, it reviewed the underlying agreement. It verified it had a valid contractual basis for the damages charges. And it reviewed the documentary evidence supporting the charges and verified the service, the furnished data. Now these are all steps that are required in the fourth circuit when a, when a, um, Furnisher is conducting a reasonable investigation, going to the underlying account documents, asking relevant information, communicating with the creditor. So they followed what we would call industry best practices. Can I ask you about this issue regarding the stove? And I know we've been talking about the stove ad nauseum, but, um, so, uh, and I know there's a dispute apparently about the timing. The complaint does allege that, uh, that Ansley never even replaced the stove, but there's a question as to whether or not that was the basis for the dispute. Those are two different things, but let's assume that that was the basis for the dispute. You've rattled off a bunch of things that the Furnisher, uh, is obligated to do. Do you agree with your co-counsel that if that had been the allegation on the front end, that the Furnisher would have had to investigate that claim? So, yes. And let me give you a little bit of background, which will help provide context. When a, uh, account is furnished to a credit reporting agency, it's furnished in something called Metro two format. It's very prescriptive about what can be furnished. It's dates. It's yes, nos, and columns. It's names of people. Um, so the details of the underlying debt, such as a stove, damaged carpet, damaged walls would never be reported to the computer, to the credit reporting agency. It's basically the number of $712 that's due. And so when a dispute comes into the credit reporting agency, they use another system called the Oscar system, which then automatically transfers that information to the credit information Furnisher. So the only information that the credit information Furnisher Furnisher gets is from this automated system, which may not necessarily have the details about the stove, the details about the handle and what have you. There's all these populated fields that get checked off. And there's really not a lot of opportunity for detail unless the consumer themselves sends in documentary information to the credit reporting agency, which then gets transferred electronically to the Furnisher. So all of these details that we have now, because of the complaint, because we've spent years doing this, we're not available to Carter young when that initial, um, investigation request came in. So, but what they were able to do was go back to the original creditor, the apartment building and say, Hey, give me your information about this debt that's due. And so what they did actually receive was the underlying lease agreement that yes, indeed provided for the damages to be charged to her provided for them to keep the security deposit. And they also received a very detailed inventory of the damages that were done to the apartment. Um, you know, the type of thing that somebody going through the apartment would write down and say, you know, pet urine on the floor, um, a stove slash needs replaced those types of items. So when Carter young got that documentary evidence, it said on it, needs replaced. Now what happens subsequently? We don't know. Perhaps the stove, they did find some other repair. They did find some other way to manage the situation. That's entirely possible. And that's exactly why we have the state court claim system in order so that the consumer and the original creditor can work those details out. Just to interrupt you on this is helpful. Um, but if, if it goes just what, I mean, you know, it, it, it could have said, I mean, at least hypothetically, it could have said, um, that, that information it gets from the landlord could say replace stuff. And it might end it in the, in the tenant may say, you didn't replace the stuff. I mean, what I'm trying to figure out is if they go to the landlord, they have the information you're talking about with a slight hypothetical modification that said replaced. Um, well, if you look at just what the landlord says, it all looks kind of, you know, in order. And, and so may it, uh, but the, the, the tenant, whether or not you, the landlords, it's been reported this way or not is saying that's completely wrong. There was never a replacement stone. Is there an obligation for the furniture to find out whether that, that is disputed as to ever happening or not? So I think that's the beauty of the readily, um, verifiable objective information because had the consumer, um, provided a picture or a affidavit from the mechanic who ended up finishing fixing the stove instead of replacing the stove, some sort of objective information. You're saying the tenant has to prove how, how would the tenant prove that someone's claimed that they replaced the stove as false? Well, the same way that they would do so in court, which is how they ended up going in this case as well. We're talking about a statute that requires an investigation. I mean, Congress passes this stuff. It may be hard to operate the way y'all do your computer systems or not, but we don't, you know, that's, that's people's choices. And Congress says you have to investigate and y'all are advocating both amicus and, and, and the defender saying this objective and verifiable standard makes some sense to me. Right. So let me finish my question. But the question, but if you're going to say that that standard exists, it in some way or another, you got to give the process an opportunity to, you know, for the dispute to be explained. So I would say that by the, by the furniture going back to the creditor and getting that apartment checkout list that had a very detailed description of the damage of the apartment, which was significantly more than just a stove. The, that site type of relevant site, you know, simultaneous detail about the damage to the apartment is objective and readily verifiable evidence. But if it's completely false and they get a document that makes it look like they replaced the stove, there's not an opportunity for that to be investigated. Is that your position? Well, I would say that when, when you have objective evidence that suggests that, and that performs a sufficient basis for the furnisher to believe that the debt is valid, which is what the statute requires. So they have evidence objectively that says sufficient basis to report the debt. There are ways to overcome that, but the ways to overcome that is not the Ipsodixit of the consumer saying, Oh, something else happened. I don't owe the debt. The way to overcome that is other equally objective ratifiable evidence. The statute says in E, unable to verify. And so that to me suggests there's objective and readily verifiable issue, right? The stove wasn't replaced. And it sounds like the way you do it. If the landlord has documents that look in order, that's all it's got to do. Well, an eyewitness report. Yes. Yes. So if you put forth a list that says, I replaced the stove and, and, and somehow, and, and, and, and the consumer says, no, you didn't. Having the document that looks like that has replaced stove on it is enough. In this situation, that would be enough because it seemed like eyewitness reporting documents that, that substantiated the claims. It's just the Fox garden. Well, you know, there's got to be a limit because we're doing tens of thousands of these a day, right? So there, and this is why the reasonably objective, this is why this line seems to make the most sense. But this is also a great way for you to a great situation for you to analyze that, analyze this issue because indeed the consumer was able to resort to state court remedies of the small claims court in order to, you know, manage that several hundred dollar dispute. And so that is still always that process has, it always will be available to consumer when there is some sort of underlying dispute. And once we have that settlement, once we have that judgment, that's the objectified. And that's the objective evidence that then can go to the furniture that has been changed the way that they report the information. All right. Thank you. Counsel. Let me just start by saying that what industry council, everything she represented about what Carter young did, none of that's in the record. None of it's in the complaint. We don't know at this point, Carter young's position is not that it investigated, but that it didn't have to investigate. So I don't think any of that is relevant. There's a couple of points I want to make in response to what was said is about what they, well, first of all, about what, what evidence they need this course decisions in Dorothy, which is in the brief 701 bed of pox, 246 says the determination of whether a furniture investigation was reasonable. It's based on an evaluation of information within the furniture position, such as correspondence between the consumer and the furniture, the data identified by the reporting agency is disputed and the furnishers, other records related to the disputed account. So if you look at the complaint, we alleged that we put without detail, but we alleged that we, in addition to the, the automated, whatever, whatever the CRA furnished or provided, we provided direct information and through the CRAs information, link the emails explaining the basis of the complaint and the reasons why we contended it was false. So, so there's an open question. And at least the complaint places an issue that there was lots of other information that they could have consulted. And it's certainly, we can't dismiss the complaint. It has to be hypothetical because of your observation about the record. Let's assume that the report to the reporting agencies was that your client owed a debt of $712 from the landlord. And then Carter receives a dispute. Carter calls up the landlord and the landlord supplies the lease and supplies the invoice detailed invoice of the charges and gives that to Carter. That's all they have now. And then Carter reports back that it's a legitimate claim and it's, but it's disputed. What else should it have done at that point? There is no objection. There was no objection from the, your client, which lists the nature of the dispute, which your client, according to the complaint said it was fraudulent or, and retaliatory. That was the complaint. Yes. And at various points, I mean that it was purely. So they go and check whether it was fraudulent. And so they get a copy of the lease and they get the invoice. And then they ask whether it is retaliatory. And they can't determine that. Whether it's retaliatory or not, because that they, the indication is they got the lease and they got the invoice for the, a detailed invoice for the damages. So they report back that the accuracy of the report was accurate. Now I'm having trouble. You know, it's, it's, it's an after the fact, whether they replace this or was necessary that that all goes to the, to some kind of litigation like process, which I don't see in this context is called for. Well, the allegation that based on this complaint, Carter Young had in his possession at the time of what it was supposed to be investigating the contention that the stove was not replaced. So they don't have that. The complaint you, as you alleged it, the complaint you let your client sent in a notice that said the claim was fraudulent and retaliatory. That's what they, she said. But it's not limited or based on Dorothy, it's not limited to what the, the charge that Carter gets. That's what they get to begin with. But that's what I get to begin with. But during this relevant, they get, that's all they get from the reporting agencies. It comes back to that. Okay. The charge is fraudulent and retaliatory. So now the question is what duty does the statute have to investigate that? So what they do is they go back and they ask about whether it's fraudulent or investigatory. And the landlord provides the lease and the detailed invoice. There's no suggestion about any item on the invoice because we don't know all the matters on the invoice. You address only one, but they address the invoice and they see the invoice and they report back that it's not fraudulent. There is a claim and it's disputed. What, at that point, what should they do? They don't have no knowledge about a stove. But they do, but that's not on the invoice. It's one of the list. But this says that they have to consider correspondence between the consumer and the furnisher. And there's multiple allegations about us providing detailed explanation. No, it doesn't say what we told them in the complaint, but I don't think we were required to tell it, but you can't decide on a motion to dismiss it. They didn't have any information in their, in their possession to show that this was the charge for the stove. That was the whole, the big heart of the whole matter. What was hard was that it was quote fraudulent and retaliatory. That's what they were investigating. And the question is how do they resolve that claim? And so they went ahead and conducted this investigation and got the information that indicated that it was a real claim. It was authorized by the lease and it was itemized. The damages were itemized and they saw the damages, a list of damages, $712 or 1,207, whatever it comes out. Cause she, it had to be 712 plus 500. And that's what they see and they get. And so now the question is unless they go and verify every charge. And of course, that's been my question from the beginning, do they have to go down an entire list and verify every charge? They basically see the invoice, which was a business record that was issued and delivered to the leasee purportedly under the lease. I don't understand at this point, I mean, Carter is a furnisher trying to solve his statutory duty, but. But you're assuming that it's doing things. There was no evidence of notice to Carter that there was a stove damaged and not repaired or charged for not repaired. You alleged on information later, it turned out the stove was not repaired or replaced, but that's not part of what Carter was faced with. Well, I think the information, we don't know the full scope of the information they had. And I don't think that we were required to plead everything that was, was provided to them. But our position is that. Yes. And we pled that we, the cause of action is that we disputed it and provided and the furnisher notified the, and they didn't investigate their position is they never, they never checked the lease. Their position is they didn't have to. I know my time's out. I just would refer the court to Penner versus Schmidt of this circuit decision. And this is what I see in the complaint. This is the only thing Carter had on or about August 2, 2022 plaintiff filed a formal dispute with Experian, alleging that the Ashley claim was fraudulent and retaliatory upon information and belief Experian promptly reported this dispute to defend. That's, that's what they, there's subsequent allegations that say that we sent emails, detailed emails to them, to Carter Young, the explaining in great detail, the basis of it. These are, these are things that are being assumed that are not, that are not in evidence and are not, you know, not before the court, but I'll close just the Penner versus Schmidt involved of a retaliatory charge on a, on a, on an account that the employee had with his employer. Can you just point where, can you maybe provide this information to Carter? I'm looking at pages, I'm at the complaint, you know, on page 9, 10 and that area. Uh, well, on September the 20th, this is page joint appendix 10. Yeah, I'm looking. Okay. Uh, uh, let's see. Um, no, excuse me on page 11, joint appendix 11, paragraph 40, the plaintiff called the defendant directly informed the manager and of the lawsuit. Later that day, though a lengthy email was on paragraph 41 was sent attaching that and describing the, the, the claim, uh, on September the, by then you'd filed a lawsuit, a small claim. No, no, no. The lawsuit wasn't filed until December of 20, of 2022. Uh, so no, this was all before. September 20. That was a small claims lawsuit against. The plaintiff filed a small claims lawsuit against Ansley and the bond company. That was the landlord, not, not Carter young. Carter young was not a part of a party to that. Then on paragraph 45 on September 26, additional email provided additional information, uh, regarding the charge. So there's, there's lots of emails and correspondence that went back and forth that are not in the record, but that are at least alleged that we're in possession. That email said that, uh, uh, And that's the nation has to defraudulent nature of answers claim and suggesting that the matter could be, uh, with defendant could be resolved without a minimum temporary block and be the reporting of the chosen of the claim pending resolution. Well, if the stove wasn't replaced and in our view, it was fraudulent. Well, it's not in the, in the allegation, it's not specifically, but it's not required to give every little element of the, uh, of the, the, the email that our position is that they had in their, in their possession, they knew that the stove had not been replaced. I've gone well beyond my time. Uh, thank you. Thank you all for your arguments. Uh, we'll come down and recounsel and move on to our final.
judges: Albert Diaz, Paul V. Niemeyer, A. Marvin Quattlebaum Jr.